UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
KRISTEN BURKE

                    Plaintiff,

       -against-

DANIEL RODRIGUEZ

                  Defendant.
-------------------------------------------------------X

ECF Case
Civ No. 07-3732 (GBD)


**MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**


**KUDMAN TRACHTEN ALOE LLP**
Attorneys for Defendant
350 Fifth Avenue, Suite 4400
New York, New York 10118
(212) 868-1010

Of Counsel:

Gary Trachten, Esq.
Alisa Silverstein, Esq.

Dated: June 26, 2007

# TABLE OF CONTENTS

Table of Authorities ......................................................................................................... ii

I.   Introduction ............................................................................................................... 1

II.  The Amended Complaint ........................................................................................... 1
     A.  The Allegations .................................................................................................. 1
     B.  The Legal Claims ............................................................................................... 3
         1.    Tortious Interference with Contract ........................................................ 4
         2.    Negligent Misrepresentation ................................................................... 5
         3.    Fraud ........................................................................................................ 6

III. Argument ................................................................................................................... 7

POINT I       TO SUFFICIENTLY STATE A CLAIM, A PLEADING
              MUST ALLEGE NON-CONCLUSORY FACTS THAT
              THEMSELVES PLAUSIBLY SUGGEST THE
              OCCURANCE OF THE UNLAWFUL CONDUCT CLAIMED ........................... 7

POINT II      UNDER FED.R.CIV.P. 9(b), TO SUFFICIENTLY PLEAD
              A CLAIM IN FRAUD OR NEGLIGENT MISREPRESENTATION,
              A PLAINTIFF MUST PLEAD HER CLAIM WITH PARTICULARITY
              AND, FOR FRAUD, PLEAD FACTS FROM WHICH A "STRONG
              INFERENCE" OF FRAUDULENT INTENT CAN BE INFERRED. ..................... 9

POINT III     THE PLEADING FAILS TO ALLEGE A COGNIZABLE
              CLAIM OF TORTIOUS INTERFERENCE WITH CONTRACT ........................ 10

POINT IV      THE PLEADING FAILS TO ALLEGE A COGNIZABLE
              CLAIM OF NEGLIGENT MISREPRESENTATION ........................................... 13

POINT V       THE AMENDED COMPLAINT'S THIRD PURPORTED
              CAUSE FAILS TO STATE A CLAIM FOR FRAUD. .......................................... 17

         A.  Elements of Common Law Fraud ................................................................... 18
             1.    Misrepresentation ................................................................................... 19
             2.    Intent ...................................................................................................... 19
             3.    Justifiable Reliance ............................................................................... 20
             4.    Damages ................................................................................................. 21

IV.  Conclusion ............................................................................................................... 21

## **TABLE OF AUTHORITIES**

### Cases

*320 Realty Management Co. v. 320 West 76 Corp.*, 221 A.D.2d 174, 633 N.Y.S.2d 295 (1st Dep't 1995) ............................................................................................................. 20

*Baker v. Guardian Life Ins. Co. of Am.*, 12 A.D.3d 285, 785 N.Y.S.2d 437 (1st Dep't 2004) .... 12

*Bangkok Crafts Corp. v. Capitolo Di San Pietro*, 2007 WL 1687044 (S.D.N.Y.) ...................... 13

*Banque Arabe et Internationale D'Investissement v. Maryland National Bank*, 57 F.3d 146 (2d Cir.1995) ......................................................................................................... 18

*Beck v. Manufacturer's Hanover Trust Co.*, 820 F.2d 46 (2d Cir.1987), *cert. denied,* 484 U.S. 1005 (1988) ....................................................................................................... 19

*Beecher v. Feldstein*, 8 A.D.3d 597, 780 N.Y.S.2d 153 (2nd Dep't 2004) ................................... 13

*Bell Atlantic Corp. v. Twombly,* 550 U.S. - , 127 S.Ct. 1955 (2007)..............................1, 7, 8

*Bower v. Atlis Systems*, 182 A.D.2d 951, 582 N.Y.S.2d 542 (3rd Dep't 1992)............................ 16

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655 (2d Cir.1997) ...................... 10

*Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 176, N.Y.S.2d 259 (1958). 18

*Colavito v. New York Organ Donor Network, Inc.*, 483 F.3d 214 (2d Cir.2006)........................ 17

*Conley v. Gibson,* 355 U.S. 41, 78 S.Ct.99 (1957) .................................................................. 7, 8

*Dealers Supply Company Inc. v. Chief Industries, Inc.*, 348 F.Supp.2d 579 (M.D.N.C. 2004)... 10

*Delcor Laboratories, Inc v. Cosmair, Inc.*, 169 A.D.2d 639, 564 N.Y.S.2d 771 (1st Dep't 1991) ............................................................................................................................ 14

*DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242 (2d Cir.1987)....................... 19

*Ellis v. Provident Life & Accident Ins. Co.*, 3 F.Supp.2d 399 (S.D.N.Y. 1998) *aff'd.* 172, F.3d 37 (2d Cir.1999)................................................................................................... 10, 15

*Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922) ........................................................ 14

*Greenberg v. Chrust*, 198 F.Supp.2d 578 (S.D.N.Y. 2002)...................................................... 13

*Harso Corp. v. Segui,* 91 F.3d 337, 347 (2d Cir.1996)................................................. 10

*In re Lois/USA, Inc.*, 264 B.R. 69 (S.D.N.Y. 2001) ..................................................... 14

*Israel v. Wood Dulson Co.*, 1 N.Y.2d 116, 151 N.Y.S.2d 1 (1956) ............................. 11

*Kimmell v. Schaefer*, 89 N.Y.2d 257, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996) .............. 14, 15

*Kosson v. Algaze*, 203 A.D.2d 112, 610 N.Y.S.2d 227 (1st Dep't 1994) *aff'd* 84 N.Y.2d 1019, 622 N.Y.S.2d 674 (1995)......................................................................................... 12

*Kregos v. Associated Press*, 3 F.3d 656 (2d Cir.1993), *cert. denied*, 510 U.S. 1112 (1994) ....... 20

*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y. 2d 413, 646 N.Y.S.2d 76 (1996).................... 11

*Lanzi v. Brooks*, 54 A.D.2d 1057, 388 N.Y.S.2d 946 (3d Dep't 1976), *aff'd*, 43 N.Y.2d 778 (1977)...................................................................................................................... 20

*Lerner v. FNB Rochester Corp.* 841, F.Supp. 97 (W.D.N.Y. 1993)............................. 10

*Liberty Environmental Systems, Inc. v. County of Westchester*, 1998 WL 799158 (S.D.N.Y) .... 12

*Lobel v. Maimonides Medical Center*, 34 A.D.3d 275, 835 N.Y.S.2d 28 (1st Dep't 2007).......... 12

*McGovern v. T.J. Best and Remodeling, Inc.*, 245, A.D.2d 925, 666 N.Y.S.2d 854 (3d Dep't 1997). ...................................................................................................................... 18

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir.1993)......................................... 9

*Monsour v. Abrams*, 120 A.D.2d 933, 502 N.Y.S.2d 877 (4th Dep't 1986) ................... 12

*Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232 (1983)............. 12

*Murray v. Xerox Corp.*, 811 F.2d 118 (2d Cir. 1987).................................................. 16

*NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.*, 87 N.Y.2d 614, 641 N.Y.S.2d 581 (1996)...................................................................................................................... 12

*New York University v. Continental Insurance Company*, 87 N.Y.2d 308, 639 N.Y.S.2d 288, 289 (1995)...................................................................................................................... 18

*O'Brien v. National Property Analysts Partners*, 936 F.2d 674 (2d Cir.1991)........................... 10

*Ossining Union Free School Dist. v. Anderson LaRocca Anderson,* 73 N.Y.2d 417, 541 N.Y.S.2d 335, 539 N.E.2d 91 (1989)........................................................................................ 14

*Phillips v. Benjamin Co. v. Rather*, 206 F.2d 372 (2d Cir.1953).................................................. 11

*Rooney v. Tyson*, 41 N.Y.2d 685, 647 N.Y.S.2d 616 (1998)....................................................... 12

*Sabatay v. Sterling Drug, Inc.,* 69 N.Y. 2d 329, 514 N.Y.S.2d 209 (1987) ................................. 12

*Sheth v. New York Life Insurance Co.*, 273 A.D.2d 72, 709 N.Y.S.2d 74 (1st Dep't 2000) ......... 16

*Shields v. CityTrust Bancorp.*, 25 F.3d. 1124 (2d. Cir.1994) ....................................................... 10

*Simon v. Castello*, 172 F.R.D. 103 (S.D.N.Y. 1997) .................................................................... 16

*Special Event Entertainment v. Rockefeller Center*, 458 F.Supp. 72 (S.D.N.Y. 1978)................ 12

*Thawley v. Turtell*, 284 A.D.2d 169, 736 N.Y.S.2d 2 (1st Dep't 2001) ........................................ 12

*Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931)............................................... 14

*Volunteer Fireman's Ins. Servs., Inc. v. McNeil and Co.,* 221 F.R.D. 388 (W.D.N.Y. 2004) ....... 9

*Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990)............................................... 10

*White v. Guarente*, 43 N.Y.2d 356, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977)......................... 14

*Zipper v. Sun Co., Inc.*, 947 F.Supp. 62 (E.D.N.Y. 1996) ........................................................... 20

## Rules

Fed.R.Civ.P. 12(b)(6)................................................................................................................. 1, 7

Fed.R.Civ.P. 8(a) ................................................................................................ 7, 9, 17, 18, 20

Fed.R.Civ.P. 9(b) ........................................................................... 9, 10, 15, 16, 17, 18, 19, 20

**I.       Introduction**

The defendant submits that this brief is in support of his motion, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the Amended Complaint, dated May 24, 2007 (Exhibit A hereto),[1] for failure to state a legally cognizable claim upon which relief may be granted.

**II.      The Amended Complaint**

As this motion to dismiss is directed to the sufficiency of the pleading, all of the well pled allegations therein are, only for purposes of this motion, *assumed* to be true.   (The defendant admits no facts by reason of anything stated in this motion.)   However, conclusory statements and, in particular, legal conclusions and contentions, set forth in the pleading are not afforded such axiomatic consideration.  *See generally*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. - , 127 S. Ct. 1955, 1964-69 – (2007).  Applying the above standard, the Amended Complaint is summarized with fair detail as follows:

**A.       The Allegations**

According to the pleading, in May 2006, the plaintiff, Krrsten Burke, a New Jersey resident, was hired by Morgan Stanley into an at-will position as an Associate in the Institutional Technology Group, at a salary of $92,500.00.   Her responsibilities included providing oversight and training for twenty-eight (28) Technology Group trainees and placing them in positions within Morgan Stanley.   (Amended Complaint ¶¶ 2, 4, 7).   On May 3, 2007, Morgan Stanley fired Ms. Burke, advising her that her discharge was "for cause."   Morgan Stanley advised her that the "cause" was her having had on Sunday, April 29, 2007, assisted the defendant Daniel

---

1 The Court's electronic docket reflects that the plaintiff's attorneys filed her Amended Complaint manually, rather than electronically (just as it served it by mail, but not electronically) and failed to comply with the directive appearing on the docket that they comply with applicable rule requiring electronic filing.  Therefore, as a courtesy to the Court, we have appended a copy of the pleading as Exhibit A to this brief.

Rodriguez in packing up his belongings at Morgan Stanley – which assistance, Ms. Burke alleges, she did in fact provide. (Amended Complaint ¶¶ 23, 24).

Concerning the defendant, Daniel Rodriguez, the Amended Complaint alleges that when Ms. Burke was hired by Morgan Stanley, Mr. Rodriguez, a New York resident, was employed by Morgan Stanley as an Executive Director, heading its Risk Modeling Group. (Amended Complaint ¶¶ 3, 5, 12). In about January 2007, Mr. Rodriguez introduced himself to Ms. Burke, expressing (through telephone and electronic communications) his interest in securing a trainee for the Risk Modeling Group. (Amended Complaint ¶ 8). Thereafter, Mr. Rodriguez began to pursue a personal, dating relationship with Ms. Burke. Initially, they went for coffee at a local Starbucks and had lunch at local restaurants. After a few weeks, Mr. Rodriguez asked Ms. Burke out to dinner and a movie. Ms. Burke went out with Mr. Rodriguez on a movie date (where a Morgan Stanley manager observed them together). (Amended Complaint ¶¶ 9-12).

The pleading then alleges that preceeding and/or during this dating relationship, Mr. Rodriguez told Ms. Burke that he was single, lived in a studio apartment near Lincoln Center, and was looking for a woman with whom he could settle down and start a family – opining too that "he was the man for her" (¶ 13) – while in fact he had been married since December 1987, was a father, and had since December 2003 lived in a home in Fishkill, New York with his wife. The Amended Complaint alleges broadly, and without further specification, that Mr. Rodriguez made numerous misrepresentations to Ms. Burke consciously, willfully and recklessly, "all to mislead her into believing that [he] was a suitable romantic partner." Although, the plaintiff alleges in her pleading that "[she] relied upon Daniel Rodriguez' misrepresentations, all to her detriment" (¶ 18), the Amended Complaint does not set forth what it is she allegedly did or did not do in reliance on which of the alleged factual misrepresentations by the defendant that are

2

pled, or how that reliance was to her detriment. (Amended Complaint ¶¶ 13-18).

Ms. Burke alleges that at some point in time – the pleading doesn't indicate when – Mr. Rodriguez told her that he was leaving the employ of Morgan Stanley, having accepted a job at Credit Suisse First Boston. Two events are alleged to have occurred on April 30, 2007 (a Friday), the sequence of the occurrences not being alleged: (a) At Mr. Rodriguez's behest, Ms. Burke traveled with him to Houston, Texas, where he made a presentation at a convention; and (b) Mr. Rodriguez told Ms. Burke that he had resigned from Morgan Stanley and that his last day at work would be April 30, 2007 (a Monday).  When, or before, the parties returned from Houston on April 29, 2007 (a Sunday), Mr. Rodriguez asked Ms. Burke to come with him to Morgan Stanley's offices and help him pack up his belongings.  Ms. Burke did so.  (Amended Complaint ¶¶ 19-23).

Four days later, on Tuesday, May 3, 2007, Morgan Stanley advised Ms. Burke that it was terminating her employment "for cause" due to her assisting Mr. Rodriguez on that Sunday. Morgan Stanley's counsel allegedly advised her that Mr. Rodriguez was "under criminal investigation" and that the assistance that she had provided him would "likely result" in her being "embroiled" in that criminal investigation.  Finally, Ms. Burke alleges that she was told (presumably by a Morgan Stanley representative) that she would be blacklisted and not receive a positive reference from the company.

### B.     <u>The Legal Claims</u>

Based essentially on the above allegations, the Amended Complaint purports to plead three causes of action: (1) tortious interference with contract, (2) negligent misrepresentation, and (3) fraud.

### 1.    Tortious Interference with Contract

Supplementing the allegations fully summarized above, the Amended Complaint, in purporting to plead a cognizable cause for tortious interference with contract, alleges (through counsel) that Ms. Burke "had a valid *at-will* employment contract with Morgan Stanley" (emphasis supplied); that Mr. Rodriguez intentionally, by way of fraud, misrepresentation, and deceipt, "improperly caused the breach" of Ms. Burke's aforementioned at will-contract; and that the breach resulted in five million ($5,000,000.00) dollars in damage to Ms. Burke. (Amended Complaint ¶¶ 27-32).

The pleading does not indicate what is alleged to have occurred that, according to the plaintiff, constituted a breach of contract.  However, reading the pleading as a whole, it appears that the plaintiff means to contend that Morgan Stanley's termination of her employment somehow constituted a "breach" of her "at-will employment contract."  Further, the pleading is at best vague about what acts of intentional misrepresentation by Mr. Rodriguez are alleged to have "caused" the purported "breach" or how such alleged acts of deception "caused" the "breach."

Finally, the pleading is unclear about whether the allegation of intentionality in ¶ 30 is intended to characterize Mr. Rodriguez' statements as having been intentionally deceptive, or to assert that Mr. Rodriguez acted purposefully to cause the "breach," or both.  Thus, the reader of the pleading cannot discern whether, for example, it means to allege that Mr. Rodriguez made misrepresentations to Morgan Stanley for the purpose of causing the company to breach its at-will contract with Ms. Burke.

## 2.    <u>Negligent Misrepresentation</u>

For her second purported cause of action, sounding in negligent misrepresentation, Ms. Burke's attorneys supplement her prior allegations by pleading the legal conclusion that the parties had a "special relationship" – plainly referring to a term of art that, as discussed in Point IV of the argument below, is a necessary element of a negligent misrepresentation claim under New York law.  It appears that the pleading contends that a dating relationship suffices to constitute a "special relationship" contemplated by the term of art. (Amended Complaint ¶ 34).

Despite its labeling of the second purported cause as sounding in *negligent* misrepresentation, the pleading's actual text can only be read as asserting a claim of *intentional* misrepresentation since it states: "Notwithstanding said special relationship, Defendant did make numerous false statements to Plaintiff, all of which Defendant *knew* to be false." (¶ 35, emphasis supplied).  Regardless of whether this cause purports to be predicated on allegations negligently made or false representations, or on misrepresentations made with knowledge of their falsity, the pleading neither discloses nor particularizes the alleged statements of fact that purportedly serve as the predicate misrepresentations for this cause.  It identifies neither the statements allegedly relied on, nor where, nor when, nor how the statements were made.  Nonetheless, with regard to those obscure allegations of misrepresentations, the pleading alleges that Mr. Rodriguez communicated those unspecified statements to Ms. Burke knowing that she desired the information for a "serious purpose," which purpose the pleading also obscures. (¶ 36).

The section purporting to plead the second cause of action also alleges that "[Mr. Burke] intended to rely upon [Mr. Rodriguez'] false statement and act upon them." (¶ 37).  That paragraph does not allege that Ms. Burke undertook any act or omission in reliance on any allegedly false statements by Mr. Rodriguez.  However, in the next paragraph, (¶ 38), the

5

plaintiff does allege (as she had alleged in ¶18) that she relied on the defendant's unidentified false statements, to her detriment, and claiming that she was thereby damaged in the amount of five million ($5,000,000.00) dollars.  However, the pleading does not set forth any conduct on her part that she attributes to her alleged reliance.  Nor does it allege any facts that show that her reliance was to her detriment and caused her any harm.

### 3.    <u>Fraud</u>

For her third claimed cause of action, purportedly for fraud, the plaintiff again refers broadly to the defendant's alleged "numerous representations"; asserts in conclusory form that representations were "material to the matters at hand"; alleges that the defendant knew that "said" statements were false when he uttered them; alleges that the defendant made "such" statements with the intent to mislead the plaintiff; and make the conclusory allegations that "[g]iven the scope of the nature of the Defendant's scheme to deceive, Plaintiff justifiably relied on his false statements."  The pleading then claims that the plaintiff's justifiable reliance caused her to suffer financial damage and emotional injury in the sum of five million ($5,000,000) dollars. (Amended Complaint ¶¶ 40-45).

Here again, the pleading does not identify the particular statements that are claimed to serve as the predicates for the claimed fraud; nor does it indicate when, where or how the statements were communicated.  The pleading alleges neither to what end the defendant intended to mislead the plaintiff, *i.e.* what is the conduct by the plaintiff that he was attempting to induce.  Nor does it allege what it is that the plaintiff was induced to do to her detriment.  The pleading does not allege facts showing that the obscure misrepresentations were material "to the matters at hand" because it does not allege facts showing what was at hand.  Nor does it allege facts showing that the alleged reliance was plausibly justifiable.  The pleading makes the claim that in

reliance on false statement $x$, the plaintiff engaged in conduct $y$, and that conduct in $z$ manner caused her harm.  However, $x$, $y$, and $z$ are left as unknowns about which the reader may speculate; they are not set forth as factual allegations.

## III.  <u>Argument</u>

**POINT I**            **TO SUFFICIENTLY STATE A CLAIM, A PLEADING MUST ALLEGE NON-CONCLUSORY FACTS THAT THEMSELVES PLAUSIBLY SUGGEST THE OCCURANCE OF THE UNLAWFUL CONDUCT CLAIMED.**

Whether a claim is sufficiently pled, while informed by the legal elements of the claim, is governed by Rule 8(a) of the Federal Rules of Civil Procedure.  As applicable here, the Rule provides:

> A pleading which sets forth a claim for relief…shall contain…(2) a short and plain statement of the claim showing that the pleader is entitled to relief…

As contemplated by the Rule, the purpose of a pleading of a claim is to "give the defendant fair notice of what the…claim is and the grounds upon which it rests."  *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99 (1957).

Only weeks ago, in *Bell Atlantic Corp. v. Twombly,* 550 U.S. - , 127 S.Ct. 1955 (2007), the Supreme Court revisited the meaning of Rule 8 and addressed what kind of information must be pled to *show* the pleader's entitlement to relief, *i.e.* the  *grounds* of the claim, to withstand a motion under Fed.R.Civ.P. 12(b)(6) attacking the legal sufficiency of the claim.  The Court's Opinion in that case clarified that however liberal the rules of pleading may be, a sufficient complaint must have enough factual content, taken as true, to suggest that it is *plausible* that the defendant engaged in conduct made unlawful, considering what would be proven to prevail on

7

the cause of action.[2]   Thus, a pleading must bespeak unlawful conduct aside from, its bare conclusory allegations.  127 S.Ct. at 1964-69.  The Court made it clear that it *rejects* applying literally the often quoted passage from *Conley v. Gibson*, "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46. Critically observing, for example, that "[o]n such a focused and literal reading of *Conley's* 'no set of facts,' a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support a recovery," *Bell Atlantic, supra,* at 1968, the Court concluded that *Conley's* "famous observation has earned its retirement." *Bell Atlantic, Id.*, at 1969.

   In short, a pleading must cross two lines to be regarded as sufficiently "plausible" to go forward: (a) the line between conclusory and factual, and (b) the line between factually neutral and factually suggestive.  *Bell Atlantic, Id.*, at n.5.  Juxtaposing conclusory allegations with neutral facts will not suffice to render those facts suggestive of wrongful conduct. *Bell Atlantic, Id.,* at 1966.

---

2 In *Twombly*, allegations merely of parallel business conduct coupled with conclusory allegations of an illegal agreement to act in such parallel manner were held insufficient to state a claim for violation of anti-trust laws where the Court regarded parallel conduct to be merely neutral facts.

**POINT II**  **UNDER FED.R.CIV.P. 9(b), TO SUFFICIENTLY PLEAD A CLAIM IN FRAUD OR NEGLIGENT MISREPRESENTATION, A PLAINTIFF MUST PLEAD HER CLAIM WITH PARTICULARITY AND, FOR FRAUD, PLEAD FACTS FROM WHICH A "STRONG INFERENCE" OF FRAUDULENT INTENT CAN BE INFERRED.**

While Fed.R.Civ.P. 8(a) governs how all claims must be pled, there is a more scrutinizing standard for certain kinds of claims that sound in fraud.  The heightened pleading requirements for such claims are set forth in Fed.R.Civ.P. 9(b), as follows:

> In all arguments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Under Rule 9(b), a complaint claiming fraud must (1) specify statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993).

In *Volunteer Fireman's Ins. Servs., Inc. v. McNeil and Co.,* 221 F.R.D. 388 (W.D.N.Y. 2004), the court summed up the judicially recognized purposes of the Rule's heightened pleading requirements, as follows:

> The purposes of the pleading requirement are to protect a defending party's reputation to [sic] harm, to minimize strike suits, and to provide detailed notice of a fraud claim to a defending party.  The Rule also discourages meritless fraud accusations that can do serious damage to the goodwill of a business or professional person.  The requirements of Rule 9(b) effectively prevent a claimant from searching for a valid claim after a civil action has been commenced.

*Id.*, at 393. *See also, Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 663 (2d Cir.1997); *Harso Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir.1996); *Lerner v. FNB Rochester Corp.* 841, F.Supp. 97, 102 (W.D.N.Y. 1993). (Rule is designed to prevent subjecting defendants to extensive discovery in largely groundless suits brought for settlement value that is disproportionate to prospects of success).

In light of the Rule's purposes, the Second Circuit has repeatedly instructed that although Rule 9(b) permits conditions of the mind to be averred generally, "the relaxation of Rule 9(b)'s specificity requirement for scienter 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" *Shields v. CityTrust Bancorp.*, 25 F.3d. 1124, 1128 (2d. Cir.1994), quoting *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676, (2d Cir.1991), in turn quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990). Accordingly, in this Circuit, to sufficiently plead fraud, a plaintiff must allege facts that give rise to a "strong inference" of fraudulent intent. *Shields v. CityTrust Bancorp.* id., at 1128. "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id*.

Fed.R.Civ.P. 9(b) has been held to govern claims for negligent misrepresentation. *See*, *Ellis v. Provident Life & Accident Ins. Co.*, 3 F.Supp.2d 399, (S.D.N.Y. 1998) *aff'd*. 172, F.3d 37 (2d Cir.1999); *Dealers Supply Company Inc. v. Chief Industries, Inc.*, 348 F.Supp.2d 579, 589-91 (M.D.N.C. 2004).

**POINT III**   **THE PLEADING FAILS TO ALLEGE A COGNIZABLE CLAIM OF TORTIOUS INTERFERENCE WITH CONTRACT.**

The cause of action for interference with contract lies against someone who intentionally

and knowingly induces a breach of contract without reasonable justification or excuse. *Phillips v. Benjamin Co. v. Rather*, 206 F.2d 372 (2d Cir.1953). The cause of action has four elements: (1) the existence of a valid contract; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach of that contract; and (4) resulting damages. *Israel v. Wood Dulson Co.*, 1 N.Y.2d 116, 151 N.Y.S.2d 1 (1956); *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y. 2d 413, 646 N.Y.S.2d 76 (1996).

On this motion, the defendant submits that the plaintiff has not sufficiently pled a cognizable claim for interference with contract because the Amended Complaint fails to show that the defendant procured a breach by Morgan Stanley of the plaintiff's at-will employment contract with that Company. First, although the pleading vaguely makes allegations that hint that the defendant might have induced the plaintiff to breach her duties to Morgan Stanley, it fails to allege facts showing, or from which it can reasonably be inferred, that the defendant induced Morgan Stanley to take any steps at all in connection with its contract with the plaintiff. Second, the pleading fails to allege facts showing, or from which it can reasonably be inferred, that Morgan Stanley breached its contract with the plaintiff by discharging her or otherwise.[3] On the contrary, by acknowledging that the plaintiff's employment contract with Morgan Stanley was "at-will," the Amended Complaint demonstrates that Morgan Stanley's only alleged action toward her, *i.e.* discharging her (with or without cause), did not constitute a breach of contract so that the claim purportedly pled inherently cannot be cognizable.

The employment at-will doctrine is well settled as a matter of New York law. Under that

---

3 Although the Amended Complaint does not identify what allegedly constitutes the breach of contract that the plaintiff claims the defendant intentionally procured, the plaintiff's inclusion in her pleading of an allegation that Morgan Stanley discharged her suggests that her claim is that the defendant *somehow* induced Morgan Stanley to discharge her and that by discharging her Morgan Stanley *somehow* breached her at-will employment contract.

doctrine, "where an employment is for an indefinite term it is presumed to be a hiring at-will which may be freely terminated by either party at any time for any reason or even for no reason." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 300, 461 N.Y.S.2d 232 (1983); *See also, Sabatay v. Sterling Drug, Inc.,* 69 N.Y. 2d 329, 333, 514, N.Y.S.2d 209 (1987); *Rooney v. Tyson*, 41 N.Y.2d 685, 689, 647 N.Y.S.2d 616 (1998).  Thus, as a matter of law, an employer's discharge of a person employed under an at-will employment contract cannot constitute a breach of that contract.  Since it is also well established that in the absence of a breach of contract there can lie no claim for tortious interference with contract, *e.g. NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.*, 87 N.Y.2d 614, 641 N.Y.S.2d 581 (1996), courts have repeatedly and consistently ruled that the procurement of the discharge of someone employed under an at-will employment contract does not give rise to a claim for tortious interference with that contract.  *E.g. Lobel v. Maimonides Medical Center*, 34 A.D.3d 275, 835 N.Y.S.2d 28 (1st Dep't 2007); *Baker v. Guardian Life Ins. Co. of Am.*, 12 A.D.3d 285, 785 N.Y.S.2d  437 (1st Dep't 2004); *Thawley v. Turtell*, 284 A.D.2d 169, 736 N.Y.S.2d 2 (1st Dep't 2001); *Kosson v. Algaze*, 203 A.D.2d 112, 610 N.Y.S.2d 227 (1st Dep't 1994) *aff'd* 84 N.Y.2d 1019, 622 N.Y.S.2d 674 (1995).[4]

Since the Amended Complaint not only fails to sufficiently plead, but essentially negates, one essential element of the asserted claim, *i.e.* breach, it is unnecessary to examine the rest of the elements.  *E.g. Special Event Entertainment v. Rockefeller Center*, 458 F.Supp. 72 (S.D.N.Y. 1978).  Nonetheless, the defendant submits the pleading is also insufficient on this cause insofar

---

4 Although there are cases suggesting to the contrary, *e.g. Monsour v. Abrams*, 120 A.D.2d 933, 502 N.Y.S.2d 877 (4th Dep't 1986), it appears that those cases have conflated the cause of tortious interference with contract with that of tortious interference with prospective economic advantage.  Such a cause requires the pleading of facts showing wrongful means or malice; the pleading at bar makes no such showing. *E.g.*, *Liberty Environmental Systems, Inc. v. County of Westchester*, 1998 WL 799158 (S.D.N.Y.).

as it fails to plead any facts which show, or from which can reasonably be inferred, a proximately causal relationship between the defendant's alleged interference and Morgan Stanley's having fired the plaintiff.  *Id. See also, Beecher v. Feldstein*, 8 A.D.3d 597, 780 N.Y.S.2d 153 (2nd Dep't 2004) (Defendant's conduct not actionable where merely incident rather than cause of breach).   Here, the utter absence of any allegation setting forth or plausibly suggesting what the defendant allegedly did in order to induce Morgan Stanley to fire the plaintiff, *i.e. of what constituted the claimed interference*,[5] makes it impossible to begin to meaningfully consider whether requisite causation is shown.

No matter how liberally indulged, the pleading cannot be said to give fair notice of the conduct by the defendant alleged to have constituted an interference.   The pleading of the tortious interference claims is by far much more conclusory than factual.   To the extent factual, it is not suggestive of a plausible claim.   Therefore, the first Cause of Action should be dismissed.

**POINT IV**          **THE PLEADING FAILS TO ALLEGE A COGNIZABLE CLAIM OF NEGLIGENT MISREPRESENTATION.**

Under New York law, the elements of a claim for negligent misrepresentation are as follows: (1) the defendant had a duty, as a result of a "special relationship," to give correct information; (2) the defendant made a false representation that he should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to her detriment.  *Bangkok Crafts Corp. v. Capitolo Di San Pietro*, 2007 WL 1687044 (S.D.N.Y.), *Greenberg v. Chrust*, 198 F.Supp.2d 578 (S.D.N.Y. 2002).

---

5 Surely, any claim that the defendant's alleged misrepresentations to the plaintiff about his marital status induced Morgan Stanley to discharge her would not plausible.

13

The party charged with the negligent misrepresentations must have a special duty to the other. That duty may arise from a contract or from the context of the parties' dealings. *In re Lois/USA, Inc*., 264 B.R. 69 (S.D.N.Y. 2001); *White v. Guarente*, 43 N.Y.2d 356, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977). Whether or not a relationship gives rise to a special duty is an issue of law for the courts. *Kimmell v. Schaefer*, 89 N.Y.2d 257, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996)715, 675 N.E.2d 450

The case law appears to show that liability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified. Professionals, such as lawyers and engineers, by virtue of their training and expertise, may have special relationships of confidence and trust with their clients. *Kimmell v. Schaefer*, 89 N.Y.2d at 264. *See, e.g., Ossining Union Free School Dist. v. Anderson LaRocca Anderson,* 73 N.Y.2d 417, 541 N.Y.S.2d 335, 539 N.E.2d 91 (1989) (engineering consultants); *White v. Guarente*, 43 N.Y.2d 356, 401 N.Y.S2d 474, 372, N.E.2d 315 (1977) (accountants); *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931) (accountants); *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922) (public weighers).

In order to impose tort liability for negligent misrepresentation, there must be some identifiable source of a special duty of care. A casual connection is insufficient to establish that special relationship. *Delcor Laboratories, Inc v. Cosmair, Inc*., 169 A.D.2d 639, 564 N.Y.S.2d 771 (1st Dep't 1991).

Here, the alleged relationship between the plaintiff and defendant does not constitute a "special relationship" imposing such a duty on the defendant.[6] Plaintiff alleges that the

---

6 The defendant's counsel have not found any case law supporting the existence of such a duty arising from a

14

defendant took the plaintiff out for coffee, lunches, dinner and a movie; that they traveled together to a convention and states that the two were "dating." There is no allegation that the parties lived together or were engaged or made plans to be married. Such a relationship, as a matter of law, does not rise to a "special relationship" contemplated by the New York courts. *Kimmell v. Schaefer*, 89 N.Y.2d at 263.

Even assuming that defendant, as an alleged romantic suitor, owed plaintiff a duty to exercise care that the information he provided was accurate, plaintiff's claim of negligent misrepresentation, like her claim for fraud, discussed in Point V below, does not meet the pleading requirements of Fed.R.Civ.P. 9(b). "A negligent misrepresentation claim must be pled in accordance with the specificity criteria of Fed.R.Civ.P. 9(b)." *Ellis v. Provident Life & Accident Ins. Co.*, 3 F. Supp.2d 399 (S.D.N.Y 1998), *aff'd*, 172 F.3d 37 (2d Cir. 1999). Here, after describing the type of activities the plaintiff and defendant engaged in, i.e., lunches and dinner, the plaintiff conclusorily alleges that the defendant "had a duty, as a result of his special relationship with plaintiff, to furnish Plaintiff with accurate and correct information" (Amended Complaint ¶ 34); that defendant made numerous false statements to Plaintiff and that "the information supplied in Defendant's representations was known by the Defendant to be desired by the Plaintiff for a serious purpose." (Amended Complaint ¶ 36). These allegations not only fail to show facutal grounds upon which the existence of a special relationship may be found, but fail also to provide particulars showing how the representations made by the defendant were desired by the plaintiff for a serious purpose; fail to provide the particulars showing what the plaintiff allegedly did in reliance on the alleged misrepresentations; fail to plead particular facts showing that her conduct was related to the representation in a way that allows such reliance to

---

friendship or romantic relationship between adults.

have been reasonable and justifiable; and fail to offer any particulars showing the detriment that she claims to have suffered as a consequence of her reliance. *See, Simon v. Castello*, 172 F.R.D. 103 (S.D.N.Y. 1997) (conclusory and speculative allegations run afoul of Rule 9(b)'s particularity requirements).

Further, the alleged misrepresentations must be factual in nature and not promissory or relating to future events that might never come to fruition. *Sheth v. New York Life Insurance Co.*, 273 A.D.2d 72, 709 N.Y.S.2d 74 (1st Dep't 2000) ("The purported misrepresentations relied upon by plaintiffs may not form the basis of a claim for fraudulent and/or negligent misrepresentation since they are conclusory and/or constitute mere puffery, opinions of value or future expectations."). Here, plaintiff alleges that the defendant "assur[ed] her that he was the man for her" (Amended Complaint ¶ 13) and misrepresented that he was "a suitable romantic partner" (Amended Complaint ¶ 18). These statements, even if made as alleged, do not constitute facts, but merely opinions and/or expressions of future expectation. *See, Murray v. Xerox Corp.*, 811 F.2d 118 (2d Cir. 1987) ("Promises of future conduct are not actionable as negligent misrepresentations."); *Bower v. Atlis Systems*, 182 A.D.2d 951, 582 N.Y.S.2d 542 (3rd Dep't 1992) (defendant's alleged assurance of employment is not an "impartation of false information for [plaintiff's] guidance…but merely an expression of future expectation").

Lastly, although the plaintiff purports to plead "negligent misrepresentation," the allegations set forth in the Amended Complaint expressly characterize the alleged misrepresentations as having been made intentionally rather than negligently. The pleading alleges that the defendant "*consciously, willfully and recklessly*" made misrepresentations of fact to Plaintiff (Amended Complaint ¶18) and that defendant *knew* these statements to be false. (Amended Complaint ¶35). The pleading never sets forth how the defendant was *negligent* in

16

imparting information to the plaintiff. It appears that the plaintiff's interposition and labeling of the second cause of action may have been an ill-conceived effort to pursue a claim for fraud without meeting the stringent pleading requirements and heightened evidentiary burdens applicable to fraud claims.[7] Thus, to the extent that the second cause is a fraud claim, the arguments in Point V below may be applicable also to this claim.

In sum, the defendant submits that the plaintiff's pleading of the purported negligent misrepresentation claim fails to set forth enough factual matter to show plausibly that the defendant is liable to her on this cause of action.

**POINT V**          **THE AMENDED COMPLAINT'S THIRD PURPORTED CAUSE FAILS TO STATE A CLAIM FOR FRAUD.**

The defendant respectfully submits that the purported Third Cause of Action for fraud is so vague, is so conclusory, and falls so short of the pleading requirements of Fed.R.Civ.P. 8(a) and 9(b), which requirements are briefed in Points I and II above, that it suggests that what is afoot is an effort, despite that the claim is groundless, to use the stigma of the existence and pendency of fraud claim and the weapon of potentially embarrassing discovery to extract a settlement without regard to the legal merits of any claim.[8] The pleading seems to allege nothing more of substance than that: the defendant, in pursuing a romance with the plaintiff, lied to her about his personal life; at the defendant's request, the plaintiff helped him pack up his belongings

---

7 Under New York law, each element of a claim of fraud must be proved by "clear and convincing" evidence. *Colavito v. New York Organ Donor Network, Inc.*, 483 F.3d 214, 222 (2d Cir.2006).

8 The defendant submits that this suggestion is also supported by the plaintiff's having had refused to voluntarily withdraw the subpoena she had issued to the defendant's former employer even after the defendant's counsel had, in requesting the withdrawal, cited to her counsel the applicable rule and relevant case law showing that the subpoena had been issued and served prematurely and without authority. The plaintiff was apparently more interested in obtaining the harassing impact of the subpoena than in complying with applicable law. This incident was the subject of a letter motion by the defendant (to which the plaintiff did not respond) and an Order by this Court quashing the subpoena.

in connection with his leaving the employ of Morgan Stanley; and Morgan Stanley (her at-will employer) discharged the plaintiff on stated grounds that the assistance she provided to the defendant constituted cause for her discharge.  Instead of showing the grounds of the plaintiff's purported fraud claim sufficiently to comply with Rule 8(a), let alone pleading the particulars of the claim to comply with Rule 9(b), the Amended Complaint leaves the defendant and the Court to do no more than speculate about (a) what misrepresentations the plaintiff claims she relied on; (b) what she allegedly did or didn't do in reliance on the unspecified misrepresentations; (c) why that reliance was justified; (d) how that reliance was to her detriment; (e) what facts give rise to an inference that the defendant intended to induce such detrimental reliance; (f) what motive did the defendant have to cause the unspecified detrimental harm claimed by the plaintiff; or (g) any of the other circumstances constituting the claimed fraud.

### A.    Elements of Common Law Fraud

"The essential elements of a cause of action for fraud are 'misrepresentation of a material fact, falsity, scienter, deception and injury.'"  *New York University v. Continental Insurance Company*, 87 N.Y.2d 308, 318, 639 N.Y.S.2d 288, 289 (1995) (quoting *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 176, N.Y.S.2d 259 (1958).  Courts have otherwise expressed the rule as requiring (1) a misrepresentation of material existing fact; (2) scienter, (*i.e.*, that the person who made the representation knew of its falsity when he made it, intending to cause harm by deception); (3) justifiable reliance on the false misrepresentation; and (4) resulting injury. *E.g. Banque Arabe et Internationale D'Investissement v. Maryland National Bank*, 57 F.3d 146, 153 (2d Cir.1995); *McGovern v. T.J. Best and Remodeling, Inc.*, 245, A.D.2d 925, 666 N.Y.S.2d 854 (3d Dep't 1997).

18

### 1.  Misrepresentation

Under Fed.R.Civ.P. 9(b), to survive a motion to dismiss, a pleading claiming fraud must "specify the time, place, speaker and content of the alleged misrepresentations." *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987).  Here, although the plaintiff sets forth some purported misrepresentations by the defendant as allegedly having taken place generally between January 2007 and April 29, 2007, she never specifies exactly what it is claimed the defendant said or specifically where or how these statements were made.  For example the plaintiff alleges in ¶ 10 that Daniel Rodriguez "routinely would tell Plaintiff he was single, and that he lived in a studio apartment near Lincoln Center" and that "he was looking for a woman with whom he could settle down and start a family."  However, the plaintiff fails to state in what form these statements were communicated (i.e., by email, phone calls, instant messages or in person – and if in person, whether it took place in the office, at the local Starbucks, etc.).  The plaintiff also fails to set forth when these alleged misrepresentations were made.  Most notably, the Amended Complaint appears to pointedly avoid identifying which of the alleged misrepresentations purportedly gave rise to her claimed reliance and resultant harm.

### 2.  Intent

Although, Rule 9(b) permits scienter to be pled generally, an ample factual basis must also be pled to inferentially support the allegation.  See Point II above.  "A common method for establishing a strong inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity for doing so."  *Beck v. Manufacturer's Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005 (1988).

Here, the Amended Complaint fails to allege what the defendant intended to be the consequence of his allegedly fraudulent statements.  The complaint is devoid of any factual

19

allegations of the defendant's motive.  Other than the conclusory allegation contained in ¶ 43 of

the Amended Complaint, that "Defendant made such statements with the intent of misleading

Plaintiff," the only other hint of an allegation of intent is contained in ¶ 18 which states that the

defendant "…made numerous misrepresentations of fact to Plaintiff, all to mislead her into

believing that Defendant" was "a suitable romantic partner."  From reading the pleading, the

defendant and Court are left to speculate that the gravaman of the plaintiff's claim may be an

allegation that the defendant lied to her for the purpose of breaking her heart.

### 3.    Justifiable Reliance

Under New York law, a party claiming fraud must show that she reasonably or justifiably

relied on the alleged predicate allegation and was thereby damaged.  *Lanzi v. Brooks*, 54 A.D.2d

1057, 388 N.Y.S.2d 946, 948 (3d Dep't 1976), *aff'd*, 43 N.Y.2d 778 (1977).  In the absence of

any non-conclusory allegation of actual reliance on the alleged predicate misrepresentation, the

fraud claim must be dismissed. *E.g.*, *Zipper v. Sun Co., Inc.*, 947 F.Supp. 62, 70-71 (E.D.N.Y.

1996).  Moreover, in evaluating the sufficiency of a fraud claim, courts often scrutinize claims of

reliance for whether the claimed reliance was justifiable under the circumstances and conclude

that such reliance could not be reasonable as a matter of law. *E.g.*, *Kregos v. Associated Press*, 3

F.3d 656, 665 (2d Cir.1993), *cert. denied*, 510 U.S. 1112 (1994); *320 Realty Management Co. v.

320 West 76 Corp.*, 221 A.D.2d 174, 633 N.Y.S.2d 295 (1st Dep't 1995).  (Fraud claim dismissed

on the pleadings because allegations in complaint showed reliance not to be justified).

The allegations of justifiable reliance in the Amended Complaint are so conclusory that

the fraud claim fails to comply even with Fed.R.Civ. P. 8(a).  See Point I above.  Moreover, for

the screening functions of Fed.R.Civ.P 9(b) to be meaningful, the plaintiff had to sufficiently set

forth with particularity the circumstances of her reliance to allow this Court to scrutinize whether

her alleged claim for reliance was reasonable and justifiable under those circumstances. See Point II above. The pleading fails to *show* any reliance that could support a fraud claim.

### 4. Damages

Although the Amended Complaint asserts that the plaintiff was damaged in the amount of $5,000,000 by reason of the claimed fraud, it offers barely a clue of what harm she is alleged to have suffered. Indeed, it is hard to conceive how the Amended Complaint can possibly give fair notice of the manner in which the plaintiff was allegedly harmed while remaining silent about what it is she did in reliance on unspecified alleged misrepresentations. A fraud case claiming $5,000,000 ought not proceed in the absence of some fair notice of what was the conduct and what were the consequences of that conduct that are claimed to account for the asserted measure of harm.

## IV.    <u>Conclusion</u>

For all of the foregoing reasons, it is respectfully submitted that the Amended Complaint be dismissed with prejudice.

**KUDMAN TRACHTEN ALOE LLP**
*Attorneys for Defendant*


By:/s/ Gary Trachten
Gary Trachten (GT5480)


/s/ Alisa Silverstein
Alisa Silverstein (AS2926)