UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------X
KRISTEN BURKE

                Plaintiff,

      -against-

DANIEL RODRIGUEZ

                Defendant.
---------------------------------------------------X

ECF Case
Civ No. 07-3732 (GBD)

## DEFENDANT'S BRIEF IN OPPOSITION TO CROSS-MOTION FOR LEAVE TO AMEND, AND IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

 

**KUDMAN TRACHTEN ALOE LLP**
Attorneys for Defendant
350 Fifth Avenue, Suite 4400
New York, New York 10118

Of Counsel:

Gary Trachten, Esq.
Alisa Silverstein, Esq.

Date: September 10, 2007

# TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................. i

Introduction ............................................................................................................ 1

Proposed Second Amended Complaint ................................................................. 2

POINT I    THE COURT SHOULD ON GROUNDS OF FUTILITY
           DENY THE PLAINTIFF'S CROSS-MOTION FOR LEAVE
           TO FILE ITS PROPOSED SECOND AMENDED COMPLAINT ....................... 6

POINT II   NEITHER THE AMENDED COMPLAINT NOR THE SECOND
           AMENDED COMPLAINT MEET THE PLEADING REQUIREMENTS
           OF FED.R.CIV.P.8(a) ........................................................................................ 6

POINT III  THE CLAIM FOR FRAUD SHOULD BE DISMISSED WITH
           PREJUDICE ...................................................................................................... 8

A   The Built-in Defense Rule ................................................................................. 8

B.  The Gravaman of the Fraud Claim .................................................................... 9

POINT IV   THE CLAIM FOR NEGLIGENT MISREPRESENTATION SHOULD
           BE DISMISSED ............................................................................................... 12

POINT V    THE PLEADING FAILS TO STATE A CLAIM OF EITHER FOR
           TORTIOUS INTERFERENCE WITH CONTRACT OR TORTIOUS
           INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE .......... 12

POINT VI   THIS COURT SHOULD EXERCISE ITS DISCRETION TO STAY
           DISCOVERY PENDING ITS DETERMINATION OF THE
           DISPOSITIVE MOTION AT BAR ................................................................... 15

Conclusion ............................................................................................................ 17

# TABLE OF AUTHORITIES

CASES

*Anti-Monopoly, Inc. v. Hasbro, Inc.*, 1996 WL 101277 (S.D.N.Y.) ............... 16

*Baker v. Guardian Life Ins. of Am.*, 12 A.D.3d 285, 785 N.Y.S. 437 (1st Dep't. 2004) ............... 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. - , 127 S.Ct. 1955 (2007) ............... 6, 7, 9

*Coakley v. Jaffee*, 49 F.Supp.2d 615 (S.D.N.Y. 1999) ............... 7

*Conley v. Gibson*, 355 U.S. 41 (1957) ............... 6

*Croton Watch Co., Inc. v. National Jeweler Magazine*, 2006 WL 2254818 (S.D.N.Y.) ............... 14

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F.Supp 477 (S.D..N.Y.) *cert. denied*, 522 U.S. 908 (1997) ....... 14

*Lobel v. Maimonedes Medical Center*, 34 A.D.3d 275, 835 N.Y.S.2d 28 (1st Dep't. 2007) ............... 13

*Moscato v. Tie Technologies, Inc.* 2005 WL 146806 (S.D.N.Y.) ............... 14

*Northrop v. Hoffman of Simbury, Inc.*, 134 F.3d 41 (2d Cir. 1997) ............... 8

*Rivera v. Heyman*, 1977 WL 86394 (S.D.N.Y.) ............... 16

*Scalise v. Adler*, 267 A.D.2d 295, 700 N.Y.S.2d 49 (2d Dept. 1999) ............... 15

*Spencer Trask Software and Info. Svcs. LLC v. RPOST Int'l. Ltd*, 206 F.R.D. 367 (S.D.N.Y. 2002) ............... 16

*Thawley v. Turtell*, 284 A.D.2d 169, 736 N.Y.S. 2d 2 (1st Dep't. 2001) ............... 13

*Transunion Corporation v. Pepsico*, 811 F.2dd 127 (2d Cir. 1987) ............... 15

*Turk v. Angel*, 293 A.D.2d 284, 740 N.Y.S.2d 50 (1st Dept. 2002) ............... 15

RULES

Fed.R.Civ.P. 8 ............... 7

Fed.R.Civ.P. 8(a) ............... 5

Fed.R.Civ.P. 9(b) ............... 5, 6

Fed.R.Civ.P. 12(b) ............... 8

Fed.R.Civ. P. 12(b)(6) ............... 6

Treatises

Wright and Miller, *Federal Practice and Procedure* §1226 ............... 8

Gary Trachten (GT 5480)
Alisa Silverstein (AS 2926)
**KUDMAN TRACHTEN ALOE LLP**
350 Fifth Avenue, Suite 4400
New York, New York 10118
Telephone: 212-868-1010
Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
KRISTEN BURKE

                          Plaintiff,

   -against-

DANIEL RODRIGUEZ

                         Defendant.
-------------------------------------------------------X

ECF Case
Civ No. 07-3732 (GBD)

**DEFENDAN'TS BRIEF IN OPPOSITION TO CROSS-MOTION FOR LEAVE TO AMEND, AND IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## Introduction

The defendant's Daniel Rodriguez submits this brief (a) in opposition to the plaintiff Kristen Burke's cross-motion for leave to file her proposed Second Amended Verified Complaint, and (b) in reply to her brief in opposition to his motion to dismiss the Amended Complaint.

The defendant submits that the arguments already made for dismissing the Amended Complaint are essentially also applicable to the proposed Second Amended Complaint. Indeed, as shown below, to the extent that the proposed Second Amended Complaint changes the picture at all, it only makes it even clearer that the claims asserted are not cognizable. Indeed, the proposed Second Amended Complaint's shotgun pleading of allegations that are immaterial, impertinent and scandalous reveals that the action is an effort to squeeze a settlement from the defendant, or simply to punish him for a perceived betrayal, through making allegations that threaten to embarrass and otherwise harm him, despite that they do not serve as predicates for any of the legal claims purportedly made.

Proposed Second Amended Complaint

The currently operative Amended Complaint consist of forty-six (46) paragraphs; the proposed Second Amended Complaint consists of one hundred twenty-five (125) paragraphs. According to the plaintiff's brief in support of her cross-motion, her offer of the added allegations serves as an effort to better comply with the pleading fraud with particularity obligations of Fed.R.Civ.P. 9(b). However, while a perusal of the proposed pleading provides a somewhat fuller and more precise picture of the narrative upon which the plaintiff bases her claims, in so doing (as will be shown in this brief) it (a) makes new allegations that merely throw added mud at the plaintiff but are not material to the claims made, *i.e.*, do not show or give rise to an inference to an entitlement to relief, and (b) indeed demonstrates more clearly than does the Amended Complaint that the action is without merit.

For the most part, the proposed Second Amended Complaint adds allegations to the Amended Complaint rather than modifying or changing them.[1] In any event, for purposes of this motion only, all of the nonconclusory facts pled in the proposed Second Amended Complaint will be presumed to be true.

The plaintiff, in her proposed pleading, *i.e.*, according to her, has finally come around to letting the Court know that the loss of employment at Morgan Stanley, which is apparently the injury for which she seeks damage award from the defendant,[2] arose from her having willingly and knowingly used her security access card to "swipe" [the defendant] into the 33rd floor" (¶95) of

---

1   There are some exceptions. For example, her first two pleadings and the Second Amended Complaint are discrepant with regard to her salary at Morgan Stanley -- $92,500 (exclusive of benefits) according to ¶4 of her first two pleadings, but $85,000 according to ¶4 of her proposed Second Amended Complaint.

2   If it is not fully apparent from the pleading, the plaintiff's brief, at p. 8, appears to clarify that the object of this action is to obtain damages for the economic and mental health consequences of the plaintiff's loss of her job at Morgan Stanley.

2

Morgan Stanley on a late Sunday night and having left that card with the defendant when she went home and he stayed behind that night (¶97).

The factual context for the plaintiff's aforementioned misconduct was this: The plaintiff believed that the defendant had on the previous Friday met with Tom Duala, his boss at Morgan Stanley, and given him a resignation letter, offering several weeks' notice, because he had accepted a job offer from Credit Suisse. However, because the meeting did not go well, Tom Duala told the defendant that this last day would be the following Monday. (¶¶76-77). Despite that she understood there to have been a rupture in the relationship between the defendant and his employer, despite the timing of the late Sunday night visit to Morgan Stanley, and despite her understanding that the defendant was leaving Morgan Stanley only to go on to a better and higher paying job (and not as a result of any negative perceptions concerning his tenure at Morgan Stanley), the plaintiff appears to allege that she reasonably believed that the defendant wanted to pack and remove his personal belongings that late Sunday night merely "so as to avoid the embarrassment and humiliation of doing so [on the next day] in front of multiple co-workers" (¶91). She also appears to allege that, under those circumstances, she reasonably believed that the defendant's security access key card wouldn't work because he kept it in his wallet near his Blackberry device and reasonably concluded that she was therefore justified in affording him access to the Morgan Stanley premises with her security key card (¶93). It is noteworthy that the plaintiff cannot claim to have witnessed any attempt by the defendant to use his own card to gain access because she alleges that it was possibly confiscated by Morgan Stanley on the prior Friday (¶93).

Neither the current nor the proposed pleading alleges whether the circumstances, as known by the plaintiff, caused her to qualify her trust of the defendant's allegedly stated reasons for why she should grant him late that Sunday night access to Morgan Stanley premises after he announced,

3

and the company accelerated, his departure. Nor does the current or proposed pleading show how any of what the plaintiff alleges she believed should or would reasonably justify her violating her employer's security rules. However, the proposed pleading does set forth allegations that would seem to bear on the reasonableness of the plaintiff's alleged trust of the defendant: According to allegations she newly makes in the proposed pleading, the plaintiff had on the prior Friday caught the defendant in a web of lies and therefore knew that the defendant had been deceitful concerning his past marital status (¶¶62-75; 81-87), and that she only "reluctantly" then traveled with him to Houston (¶89). The plaintiff's proposed pleading reveals also that she had recently ended a lengthy engagement upon learning that her fiancée had been unfaithful to her, demonstrating that she was aware that romantic proclamations do not in and of themselves earn unqualified trust (¶28).

The plaintiff's brief makes essentially no effort to explain what the allegations newly added to the proposed Second Amended Complaint purport to show, and it appears that those allegations add nothing that shows or tends to show any entitlement to relief for the injury claimed. The plaintiff fails to show why the proposed pleading newly characterizes the defendant's allege romantic pursuit of the plaintiff as "harassing" (¶32) and asserts that his alleged statements to her about being ready to make a commitment to have a family constituted violations of Morgan Stanley's internal code of conduct (¶51). Nor does she indicate why the newly proposed pleading is now explicit in alleging that the defendant, a married man with children, had sexual intercourse with her (¶57) on February 27, 2007. The failure of the proposed pleading and plaintiff's brief to offer guidance about how the added allegations are intended to show entitlement to relief on the legal claims pled suggests that the pleading reflects an effort gratuitously (or for some purpose not properly pursued through litigation) to embarrass the defendant.

Similarly, the newly proposed pleading offers a long narrative (¶¶34-43) about the defendant's having told the plaintiff about his having a longstanding and loyal personal relationship with Tom Duala (his boss at Morgan Stanley), and an allegation that the defendant violated the Morgan Stanley internal code of conduct by revealing to the plaintiff Mr. Duala's 2006 bonus. The defendant's counsel is at loss to discern how the allegations in the narrative about Mr. Duala could serve to support her claim, as distinct from merely impugning the defendant's character. If the narrative is relevant at all, it is relevant to the reasonableness of her alleged reliance in that, if true, it shows that she knew that the defendant was someone who would betray the confidence of, and his bond with, a longstanding "personal friend" who had allegedly looked at him as his son, helped him secure his position at Morgan Stanley, and "pull[ed] strings" to get him the higher end of bonus compensation, and to whom he claimed to be loyal.

Still without going through each and every one of the one hundred twenty-five (125) paragraphs of the allegations, the following are examples of other allegations made regarding which the defendant cannot discern the legal significance: The defendant allegedly lied about how much a recruiter would be paid for bringing the defendant to Credit Suisse (¶¶41-42). The defendant lied in claiming that he liked to have sexual liaisons with women when traveling on business but that Morgan Stanley's "cheap" requirement that he share a hotel room with a co-employee adversely affected his ability to do so (¶¶43-46). The plaintiff's direct manager at Morgan Stanley allegedly saw her holding hands with the defendant at a movie, "confronted" her about the outing, and told other employees that she had seen the hand holding (¶¶47-49). The defendant respectfully leaves it to the Court to determine whether these allegations, if assumed to be true, have any legal significance other than to demonstrate the plaintiff's ready willingness to demonstrate disrespect for and disregard of Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure.

5

POINT I         THE COURT SHOULD ON GROUNDS OF FUTILITY DENY THE PLAINTIFF'S CROSS-MOTION FOR LEAVE TO FILE ITS PROPOSED SECOND AMENDED COMPLAINT.

The plaintiff has correctly noted on page 4 of its brief that where a plaintiff specifically seeks leave to amend a complaint to cure a failure to plead fraud with the particularly required Fed.R.Civ.P. 9(b), a court should ordinarily grant it. However, as the plaintiff has also correctly noted, there is an exception to that rule where "the plaintiff has acted in bad faith or the amendment would be futile." Since, as is demonstrated by the defendant's initial brief and as further shown below, the proposed amendment would be futile, and the plaintiff's cross-motion should be denied.[3] The pleading is futile because, like the Amended Complaint, indeed even more clearly so, the Second Amended Complaint cannot stand up to a Fed.R.Civ. P. 12(b)(6) motion to dismiss.

POINT II        NEITHER THE AMENDED COMPLAINT NOR THE SECOND AMENDED COMPLAINT MEET THE PLEADING REQUIREMENTS OF FED.R.CIV.P. 8(a).

Remarkably, despite that the defendant's brief, on page 8, cited and discussed the recent Supreme court decision *Bell Atlantic Corp. v. Twombly*, 550 U.S. - , 127 S.Ct. 1955 (2007), and clearly noted and point-cited to the Court's having *expressly disavowed* the passage from *Conley v. Gibson*, 355 U.S. 41, 47 (1957) that had stated "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the plaintiff's opposition brief (on pages 3 and 4), insistently and frivolously argues that this Court should on this motion apply that disapproved-of standard. In her brief, the plaintiff fails to attempt to reconcile her argument with the Supreme

---

[3] Although the defendant contends that the proposed pleading itself reveals also that the plaintiff is in bad faith pursuing this action, the futility of the pleading suffices to warrant denial of the cross-motion and the bad faith question need not be reached by the Court.

6

Court's recent declaration that the precise standard she asks this Court to apply is now merely a "famous observation [that] has earned its retirement." *Bell Atlantic*, 127 S. Ct. at 1969. Nor does the plaintiff's brief make any effort to explain how her Amended Complaint or proposed Second Amended Complaint show through non-conclusory and suggestive (non-neutral) factual allegations that she is entitled to relief, as Rule 8(a), as construed in *Bell Atlantic*, requires.

Indeed, the defendant submits that far from curing the deficiency of the Amended Complaint, the newly proposed pleading only shows increased disregard of the Rule: Rule 8(a) requires a "short and plain statement of the claims showing that the pleader is entitled to relief". However, the plaintiff has instead engaged in "shotgun pleading" that indiscriminately mixes and asserts conclusory allegations and factual allegations that although (if true) are undoubtedly suggestive that the defendant is to be held in disrepute, are neutral (within the meaning of *Bell Atlantic*) in terms of showing entitlement to relief. The defendant submits that it is readily apparent that the pleading represents not an attempt to afford fair notice of cognizable claims, but rather an effort to obfuscate the absence of any such claim in the misguided hope that throwing enough mud will suffice to lead a court to be reluctant to engage in scrutinizing the pleading.

Such "shotgun pleading" has often been subject to judicial criticism and disapproval. In *Coakley v. Jaffee*, 49 F.Supp.2d 615 (S.D.N.Y. 1999), the court described the pleading before it as a "'shotgun pleading' that illustrates plaintiff's disrespect for Rule 8". That court's description, which follows, can just as well apply to the pleading that the plaintiff at bar moves to file:

> It sets forth a potpourri of vague and conclusory allegations that for the most part are not explicitly linked to any specific factual assertions, making it extremely difficult to discern the precise nature of the claim. Plaintiffs' equally obtuse memoranda of law only increase the uncertainty.

*Id.* at 625.

7

It is especially troubling that the plaintiff would propose a new pleading that is so rambling, prolix and disjointed as the one she proposes even after having received the defendant's moving brief that directed her attention to, and educated her about, the appropriate pleading standards and the elements of the causes of action under which she purports to make her claims. Under these circumstances, the defendant respectfully requests that the Court exercise its discretion to dismiss the action with prejudice.

**POINT III**      **THE CLAIM FOR FRAUD SHOULD BE DISMISED WITH PREJUDICE.**

A. <u>The Built-In Defense Rule</u>

It is well established that when a pleading alleges facts that are fatal to the claims that in the absence of such facts might be a sufficiently pled, the claims are properly dismissed on a Rule 12(b)(6) motion. *See generally*, Wright and Miller, *Federal Practice and Procedure* §1226. Indeed, in the case at bar, where the plaintiff has submitted a proposed Second Amended Complaint in verified form, this Court may treat such sworn allegations as evidentiary proof of defenses and thereupon convert the motion to one of summary judgment and dismiss the Amended Complaint with prejudice based on those sworn allegations. Fed.R.Civ.P. 12(b) contemplates conversion of motions to dismiss to summary judgment motions when affidavits are considered. *Cf. Northrop v. Hoffman of Simbury, Inc.*, 134 F.3d 41, 49-50 (2d Cir. 1997). ("[T]he fact that a complaint alleges facts that constitute a defense... does not in all cases require dismissal... [T]he court may decide *that* a motion for summary judgment... is more appropriate and productive in terms of reaching the merits...."). The defendant submits that, as shown below, the allegations in the Amended Complaint as supplemented in the proposed Second Amended Complaint show that, as a matter of law, the fraud claim cannot be sustained.

B.  The Gravamen of the Fraud Claim

Although the pleading and proposed pleading are anything but clear in describing the gravamen of the plaintiff's claim in fraud, the introduction section to her counsel's brief provides a measure of clarification: "By way of an elaborate scheme to defraud, and by use of Morgan as a backdrop to and instrument of that scheme, defendant fraudulently deceived the plaintiff resulting in her termination for cause from her position at Morgan". In clarifying that the injury resulting from the alleged fraud for which she seeks redress is the termination of her employment (and the economic and mental harm that arises from the termination), the plaintiff assists the Court and defendant in their attempts to discern the claim.

Since (as discussed on pp. 18-21 of the defendant's moving brief) the elements of fraud are what they are, the Court's attention is directed to searching the pleading and proposed pleading for (1) misrepresentations of material fact by the defendant that (2) were deceptively made for the purpose of inducing the plaintiff to engage in the conduct that caused her alleged resulting harm, *i.e.*, for the purpose of inducing her to provide her security card to assist the defendant to gain entry into Morgan Stanley's premises, and which (3) gave rise to the plaintiff's having acted reasonably and being justified in violating Morgan Stanley's security rules in using her security access card to grant the defendant entry to the premises on a late Sunday night. Once it can anchor the fraud claim to its (4) resulting injury element, the Court can pick out what allegations are material and distinguish, in accordance with *Bell Atlantic v. Twombly, supra* (in Point II and discussed in Point I of the moving brief) between neutral and suggestive factual allegations.

The defendant submits that the Court should use the above paradigm and thereupon readily conclude that the overwhelming majority of misrepresentations alleged in the pleading and proposed pleading could not plausibly be regarded as having been uttered by the defendant with the purpose of

9

inducing the plaintiff to later wrongfully grant him access to Morgan Stanley's premises. In deciding the motion and cross-motion at bar, the Court should consider only allegations concerning alleged misrepresentations that could plausibly have been made to induce the plaintiff to allow the defendant to use her security card to obtain access to Morgan Stanley's premises. It should then consider whether under the circumstances alleged by the plaintiff, a fact finder could reasonably conclude that the plaintiff's conduct that resulted in her claimed injury was reasonable and justified.

The plaintiff alleges that the defendant misrepresented to her on Sunday, April 27, 2007, that his last day at Morgan Stanley would be the next day; that he wanted to go to the office and pack his personal effects late that night in order to avoid the "embarrassment and humiliation" and embarrassment of packing up the next day with colleagues around him; and that his own access card stopped working because it came into proximity with his Blackberry. As an initial matter, the defendant submits that if those representations were made and the plaintiff subjectively believed them to be true, they could not, as a matter of law, either be (a) *material* to a decision about whether to violate Morgan Stanley's security access card rules, or (b) justifiably relied on to violate those rules – even if (perhaps especially if) the parties were in a dating relationship. However, even if *arguendo* those circumstances alone could leave room for factual issues to be tried, additional facts also alleged by the plaintiff herself put beyond reach any reasonable finding that she acted reasonably and justifiably.

As set forth in this brief's review above of the proposed Second Verified Amended Complaint, the plaintiff alleges that at the time of the conduct allegedly undertaken by her in reliance on misrepresentations by the defendant, and for which she was fired, (a) she believed that the defendant was a departing employee who was essentially out-the-door after a meeting in which he advised of his resignation, which meeting didn't go well, and in which meeting his offer of a notice

period was declined; (b) she knew that the defendant had very recently been repeatedly and persistently deceptive with her by lying about this past marital status and by falsely asserting that evidence contrary to his story had nothing to do with him; (c) she had not been shown (and apparently did not ask to see) the defendant's purportedly defective access card; and (d) she believed that the circumstance of the defendant's leaving Morgan Stanley were that he had landed a more lucrative job, and not because of circumstances that ordinarily give rise to any humiliation and embarrassment in packing up in front of one's colleagues. It is respectfully submitted that these additional allegations by the plaintiff constitute a built-in defense. They show that her conduct in allowing the defendant to use her security card to get access to the Morgan Stanley premises, and then in leaving him alone on the premises with that card, cannot constitute justifiable and reasonable conduct for which she is entitled to escape responsibility through having a remedy against the defendant.

On the basis of the totality of the circumstances pled and/or attested to by the plaintiff, this Court is respectfully requested to rule that, as a matter of law, the plaintiff's alleged reliance on the defendant's alleged misrepresentations in engaging in employee misconduct was not and could not be reasonable or justifiable. The Court is also respectfully requested to rule that the misrepresentations allegedly made by the defendant to induce the plaintiff to engage in employee misconduct were not and could not be material to any decision about whether the plaintiff should have engaged in the misconduct that she admits to. The fraud claim, therefore, should be dismissed with prejudice.

**POINT IV**     **THE CLAIM FOR NEGLIGENT MISREPRESENTATION SHOULD BE DISMISSED.**

It is noteworthy that although the plaintiff proposes to replead her purported negligent misrepresentation claim in her proposed Second Amended Complaint, her opposition brief provided no points of opposition to any of what the defendant argued in Point IV in his moving brief – except to the extent that the plaintiff offers a merely more prolix pleading to purportedly cure the Rule 9(b) challenge. At this point, the defendant notes that in light of the newly proposed pleading, the claim is insufficient also for reasons not argued in the defendant's moving brief. Since reasonable reliance to one's detriment is an element of a claim of negligent misrepresentation as well as fraud, and since the pleading makes no discernible effort to distinguish between allegations of fraudulent and negligent misrepresentations, the arguments made concerning reasonable and justifiable reliance made in Point III above are equally applicable as additional grounds for dismissing this purported cause.

**POINT V**     **THE PLEADING FAILS TO STATE A CLAIM OF EITHER FOR TORTIOUS INTERFERENCE WITH CONTRACT OR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE.**

In her opposition brief, the plaintiff has grossly mischaracterized the defendant's moving argument concerning dismissal of the plaintiff's first cause of action, which she deliberately and explicitly labeled and textually described as sounding in "tortious interference with contract", and which she again labels and textually describes as "tortious interference with contract" in her proposed Second Amended Complaint. On page 4 of her brief, the plaintiff asserts that "Defendant argues that the State of New York does not recognize a cause of action by an at-will employee for tortious interference with employment relations". However, the defendant did not so argue; it

12

merely *correctly* argued that, under New York law, a cause of action *for tortious interference with contract* cannot be based on allegations that a defendant procured the discharge of someone under an at-will employment agreement.

The confusion lies with the plaintiff, who apparently still fails to appreciate that tortious interference with contract is distinct from, and has elements different than, tortious interference with prospective economic relations.[4] Indeed, the defendant's moving brief did not seek to "hide the ball" concerning the distinction. It briefly addressed the latter tort in footnote 4. Also, three of the four cases cited for the proposition that there exists no claim for tortious interference with contract for procuring the termination of an at-will employee addressed also, as a separate tort, tortious interference with prospective business relations. *See Lobel v. Maimonedes Medical Center*, 34 A.D.3d 275, 835 N.Y.S.2d 28 (1st Dep't. 2007); *Baker v. Guardian Life Ins. of Am.*, 12 A.D.3d 285, 785 N.Y.S. 437 (1st Dep't. 2004); *Thawley v. Turtell*, 284 A.D.2d 169, 736 N.Y.S. 2d 2 (1st Dep't. 2001).

As the plaintiff has correctly pointed out, some cases express the view (which may well be the better view) that New York law recognizes that "in certain limited situations," the procuring of the termination of a plaintiff's at-will employment can constitute a tortious interference with prospective economic advantage. *But see, Lobel, supra.* However, the plaintiff is the master of her complaint. Therefore, since she explicitly couched her claim only in tortious interference with contract, the defendant directed his motion and arguments (other than for footnote 4) to what the plaintiff chose to plead. Now that the plaintiff's brief (albeit not her proposed pleading) indicates an

---

4    The latter tort is also called tortious interference with prospective business relations, or with prospective economic advantage.

13

intention to have the claim's sufficiency tested as a tortious interference with prospective economic relations claim, the defendant now meets that claim below in accordance also with the legal theory that in some circumstances could apply that tort to at-will employment.

As this Court has explained in *Croton Watch Co., Inc. v. National Jeweler Magazine*, 2006 WL 2254818*9 (S.D.N.Y.), the elements of tortious interference with prospective economic advantage are: (1) the plaintiff had a business relationship with a third party; (2) knowing of that relationship, the defendant intentionally interfered with it; (3) in interfering with the relationship, the defendant either (a) acted solely out of malice, or (b) used dishonest, unfair, or improper means; and (4) the interference caused the injury to the business relationship. Unless the defendant's acts were for the sole purpose of causing the plaintiff harm, then the general rule is that the improper means must either be criminal or independently tortious. *Id.*

With regard to the foregoing, the plaintiff's pleading and proposed pleading shows only that she had an employment relationship with Morgan Stanley and that the defendant knew of it. It does not allege facts showing intentional interference. For there to be intentional interference, a defendant "must interfere with the business relationship directly; that is, the defendant must direct some activities toward the third party and convince the third party" either to not enter into or to terminate a business relationship. *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F.Supp 477, 482 (S.D.N.Y.) *cert. denied,* 522 U.S. 908 (1997). The plaintiff's pleading and proposed pleading alleges no activities directed towards Morgan Stanley in connection with the plaintiff's continued employment status; nor does it allege any conduct by the defendant that can plausibly be regarded as having as its object that the plaintiff would lose her job. A complaint for interference must be dismissed if it fails to set forth the facts claimed to constitute the interference. *Moscato v. Tie Technologies, Inc.* 2005 WL 146806 *5 (S.D.N.Y.)

Further, the plaintiff has alleged no facts that would suggest that the defendant's sole motive in any of the conduct attributed to him relating to Morgan Stanley was to harm the plaintiff, as distinct from gaining access to Morgan Stanley's premises for his own purpose. Moreover, as shown above, assuming all of the well pled and attested facts to be true, the defendant did not commit a tort. Therefore, the third element of the interference with prospective economic advantage tort cannot be satisfied. *Croton Watch, supra.*

Finally, the plaintiff has failed to plead facts that would show that the defendant's alleged conduct in connection with Morgan Stanley – particularly as distinct from her own conduct – was the proximate cause of her having lost her job. *See, Turk v. Angel,* 293 A.D.2d 284, 740 N.Y.S.2d 50 (1st Dept. 2002). *See also, Scalise v. Adler,* 267 A.D.2d 295, 700 N.Y.S.2d 49 (2d Dept. 1999).

**POINT VI   THIS COURT SHOULD EXERCISE ITS DISCRETION TO STAY DISCOVERY PENDING ITS DETERMINATION OF THE DISPOSITIVE MOTION AT BAR.**

On pages 2 and 3 of her brief, the plaintiff requests that she should now before the dismissal motions and cross-motion are decided, be permitted to reissue the third-party subpoena that this Court previously quashed. This follows on the differences between the parties noted in the joint proposed pretrial order that was filed on July 27, 2007, wherein the defendant contended that, under the circumstances of this case, discovery should be stayed pending a resolution of the dismissal motion.

The Second Circuit has affirmed that a court has discretion to stay discovery pending resolution of dispositive motions. *Transunion Corporation v. Pepsico,* 811 F.2d 127, 130 (2d Cir. 1987). Courts have noted that such a stay of discovery may be appropriate where there is a "substantial argument for dismissal" and the "motion to dismiss could significantly narrow, if not

eliminate, the issues in the case" so that proceeding with discovery "'would waste the parties' resources and constitute an undue burden on the defendants". *Rivera v. Heyman*, 1977 WL 86394 (S.D.N.Y.) Other factors include whether the stay is expected to be for a short or long period, and whether the plaintiff would be prejudiced by the stay. *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 1996 WL 101277 (S.D.N.Y.). "[A] court should also consider the strength of the dispositive motion that is the basis of the discovery stay application." *Spencer Trask Software and Info. Svcs. LLC v. RPOST Int'l. Ltd*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002).

It is now little more than a mere four months after the acts complained of. Subject to any further reply by the plaintiff on her cross-motion, the defendant's dismissal motion is fully briefed and the oral argument is soon scheduled for September 20, 2007. Given the scandalous nature of the allegations pled, which the defendant contends were gratuitously pled, permitting third party discovery to proceed in haste risks subjecting the defendant to what is likely to be unnecessary embarrassment and harm to his reputation. The defendant contends that the plaintiff's purpose in unlawfully issuing it initial subpoena, and in pressing for an immediate right to re-issue it, is to use the threat of such embarrassment, rather than a meritorious claim, to squeeze a settlement from him.

Give the circumstances of this case and the factors that properly inform the issue, the defendant respectfully requests that the Court stay further discovery pending a disposition of the pending dismissal motion and cross-motion for leave to amend.

Conclusion

For all of the reasons set forth above and in his moving brief, the defendant respectfully urges this Court to deny the plaintiff's cross-motion for leave to further amend her pleadings, to dismiss this action with prejudice, and to stay discovery pending the disposition of the aforementioned cross-motion and motion.

Dated:  September 10, 2007

Respectfully submitted,

KUDMAN TRACHTEN ALOE LLP
Attorneys for Defendant

By: _____
Gary Trachten (GT5480)

By: _____
Alisa Silverstein (AS2926)